GLADNEY, Judge.
Suit was instituted for the recovery of the value of certain assets and monies which were conveyed by plaintiff, George Hardy, to Harry B. Walker, defendant herein. After trial on the merits, the lower court rendered judgment rejecting the demands of plaintiff, whereupon the latter effected this appeal.
The value of the assets and monies for which plaintiff originally sought recovery was alleged to be some $29,802.16. Defendant answered and asserted his acquisition of the various assets listed in plaintiff’s petition by means of a valid contract of sale entered into between the parties on June 23, 1955. Defendant’s answer also admitted that cash in the amount of $15,-237.48 was received from plaintiff, and averred that such sum was advanced by Hardy pursuant to an agreement between the parties whereby each would contribute to the financing of a beer distributing enterprise, H. & S. Distributing Company. Defendant further averred that according to the terms of said agreement with reference to the allocation of costs and profits Hardy’s capital contribution has been absorbed in business losses.
Plaintiff has abandoned any claim to compensation for the assets conveyed under the instrument of sale and relies exclusively upon defendant’s admission that $15,237.48 of Hardy’s money was received by Walker.
Although the testimony adduced at trial of this cause is, on many points, completely irreconcilable, certain facts have been established. Prior to June 23, 1955, plaintiff was the owner and manager of H. & S. Distributing Company, which company was engaged in the distribution of Carling and Muehlebach products under a federal permit issued to plaintiff’s wife. In May of 1955 plaintiff learned that his wife’s permit was terminated by operation of law and that he, Hardy, could not obtain a permit in his own name. Defendant, a certified public accountant who had acted as accountant to Hardy and H. & S. Distributing Company, was requested by Plardy to secure a permit and operate the business for Hardy’s benefit. This defendant refused to do, but after further negotiations, the parties executed an instrument of deed on June 23, 1955, whereby plaintiff, for the recited consideration of $3,581.10, conveyed to defendant all of the assets, fixtures, inventories and equipment of H. & S. Distributing Company. Walker obtained a wholesaler’s permit and since June of 1955 has operated the business in his own name. Capital contributions to the business were made by Hardy in the amount of $15,237.48, and by Walker in the amount of $5,162.52. Hardy held the position of warehouseman and salesman with the company until February or March of 1957, and received monthly remuneration for his services during that period, but the record does not make it clear whether such payments were in the nature of salary, expenses, commissions, or a percentage of profits.
*469 In April of 1956, Mr. Walker was offered the franchise to distribute Miller’s High Life Beer, but in order to avail himself of this opportunity it was necessary that he raise a considerable amount of cash. Accordingly, in May of 1956, he mortgaged his home and deposited the proceeds of the note, some $17,000, to the account of H. & S. Distributing Company. Several months later George Muehlebach Corporation sold out to Schlitz Brewing Corporation. Furthermore, Pearl Beer made substantial inroads on the markets previously available to the original H. & S. products. As a result, by far the greater portion of H. & S. Distributing Company’s business was confined to the distribution of Miller’s High Life Beer, and the sale of Carling products declined considerably.
Resolution of this appeal necessitates a determination of whether defendant acquired the $15,237.48 from plaintiff with the understanding that the capital structure of the distributing company would continue to be the property of the plaintiff, or whether the money was considered to be a capital contribution to a business venture to be operated for the mutual benefit of the parties.
The transcript of this cause consists of the testimony of three witnesses — plaintiff, defendant, and Mrs. Walker, defendant’s wife. Plaintiff testified that as a result of his implicit trust and confidence in the defendant he turned his entire business and savings over to Walker; that there was never any written agreement as to plaintiff’s future interest in the business, but that it was orally agreed that defendant would purchase the business and allow plaintiff to operate and control same; that it was further agreed plaintiff would retain ownership of the capital upon which the-business operated, and would receive annually, in the form of a bonus, the entire profits of the business for that year; that plaintiff delivered the $15,237.48 to Walker in cash when assured by the latter that the permit would be lost if it appeared that plaintiff had anything to do with the business; and, it was always understood that the only remuneration to which defendant would be entitled was a monthly salary for taking care of the books.
Defendant’s version of the developments culminating in this controversy is, to say the least, considerably at variance with that of plaintiff. Walker testified that the instrument of sale entered into by the parties on May 23, 1955, was executed with the understanding that the business would thereafter be operated as a partnership, although of necessity defendant would be the sole ■ record owner. The $15,237.48 advanced by plaintiff was averred by defendant to have been a capital contribution to the partnership, the counterpart to which was defendant’s own contribution of $5,162.52. Inasmuch as plaintiff’s contribution was considerably in excess of that made by defendant, the profits yielded in 1955 were, according to Walker, proportionately allocated, to-wit: 75 per cent to Hardy and 25 per cent to Walker.
Defendant explained that the acquisition of the Miller’s franchise in the Spring of 1956 necessitated a further understanding as to the allocation of costs and profits between the parties, and that they, therefore, conferred together at defendant’s residence in May of 1956. Walker maintained that they thereupon agreed that the Miller’s franchise would be acquired and financed by defendant and that he likewise would be entitled to all profits accruing therefrom; that defendant would be entitled to the entirety of the profits realized from the Carling and Muehlebach sales; and that handling and distribution costs incident to the sale of the latter products for the year 1955 would be chargeable as costs against plaintiff’s sales in future years irrespective of whether actual costs were greater or less than the 1955 figure. Defendant introduced into evidence a statement of operations covering sales of Muehlebach and Carling products for the years 1955 through mid-1958. The statement demonstrates that offsetting of the 1955 costs against sales in 1956, 1957, and 1958, produces a net loss of *470 some $21,553.26 for the three year period. Thus, defendant maintains that plaintiff’s $15,237.48 contribution to capital has been more than absorbed by losses attributable to his interest in H. & S. Distributing Company.
The trial court’s judgment for defendant was predicated on its conclusions that plaintiff’s testimony was unacceptable, that plaintiff had not met his burden of proof, and that the understanding between the parties was essentially as outlined by defendant. We are of the opinion the judgment so rendered is not manifestly erroneous.
Plaintiff’s case rests solely upon his own testimony and, as found by the lower court, his account of the parties’ agreement is not convincing. Certainly, the substantial contributions to capital made by defendant are inconsistent with plaintiff’s testimony that Walker was merely a “front” for plaintiff’s operations, and that Walker’s maximum remuneration was agreed to be a small monthly salary. That defendant would have mortgaged his home to further invest in a venture from which he stood to derive no substantial profit is completely beyond the realm of reasonableness.
Counsel for plaintiff argues that the agreement testified to by defendant was so uncertain and incomplete as to be void for lack of certainty, and, additionally that it was without consideration and void for lack of mutuality. At the time the agreement was allegedly entered into, the prospects for continued Carling and Muehle-bach sales were quite encouraging, 1955 having been a profitable year for said products. We are of the opinion, therefore, that the allocation of future costs on the basis of the 1955 figure might, and in all probability was, in plaintiff’s contemplation a most desirable agreement. Neither do we consider the agreement to have been lacking in certainty.
The agreement testified to by defendant offers, in our opinion, a more reasonable explanation to the parties’ actions than does that for which plaintiff contends. Furthermore, the trial judge expressly dismissed plaintiff’s testimony as being unworthy of belief. Under the circumstances we are not inclined to grant plaintiff the relief prayed for, for such relief would of necessity be predicated solely on that same testimony.
Accordingly, the judgment from which appealed is affirmed at appellant’s cost.